**FILED**
**U.S. District Court**
**District of Kansas**
03/11/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

BRENDEN COLE ROBBINS,

**Plaintiff,**

v.                                                                    **CASE NO. 26-3034-JWL**

FRANKLIN COUNTY ADULT
DETENTION CENTER, et al.,

**Defendants.**

**<u>MEMORANDUM AND ORDER TO SHOW CAUSE</u>**

Plaintiff Brenden Cole Robbins, a state prisoner currently incarcerated at the Osage County Jail ("OCJ") in Lyndon, Kansas, filed this civil action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff has been granted leave to proceed in forma pauperis (Doc. 4), and his initial partial filing fee is due to the Court on or before April 9, 2026. The Court has reviewed the complaint and has identified deficiencies, set forth below, which leave it subject to dismissal in its entirety. The Court will grant Plaintiff time to show cause, in writing, why this matter should not be dismissed.

I.    **Nature of the Matter before the Court**

Although Plaintiff is currently housed at the OCJ, the events underlying his complaint occurred when he was housed at the Franklin County Adult Detention Center ("FCADC") in Ottawa, Kansas. As Defendants in this case, Plaintiff names the FCADC; Lieutenant Tammy Alexander, who is "in charge of [FCADC] administration"; and Officer A. Dillon, who is employed at the FCADC. (Doc. 1, p. 1-2.) As the factual background for the complaint, Plaintiff alleges that while he was incarcerated at the FCADC, his request to attend a church service at the jail was denied because of an "internal conflict between the officers of the jail and sex offenders

1

housed there." *Id.* at 2. When Plaintiff asked why his request was denied, he was told that he could not attend because he is a sex offender. *Id.*

In Count I, Plaintiff asserts the violation of his right to religious liberty. *Id.* at 3. In Count II, Plaintiff asserts "[d]iscrimination." *Id.* As supporting facts for both Count I and Count II, Plaintiff alleges that at approximately 9:00 or 9:30 a.m. on December 16, 2025, while he was incarcerated at the FCADC, he asked Defendant Dillon if he could attend the group church service. *Id.* She replied, "'No,'" and when Plaintiff asked why not, she said it was because he is a "'sex offender.'" *Id.*

Plaintiff further alleges in support of Count I that he advised Defendant Dillon of his right to religious liberty under the Kansas Constitution and he asked her what administrative policies prevented him—and another inmate in similar circumstances—from attending group church services. *Id.* at 6. Defendant Dillon told Plaintiff that it was a "'safety concern.'" *Id.* She became irritated when Plaintiff continued to question her and ultimately stated that they were not allowed to attend group services "'because you're sex offenders and if you have a problem with that then take it up with [Lieutenant] Alexander.'" *Id.*

Plaintiff contacted the FCADC control room and asked Officer P. Golden for a copy of administrative policies related to "why sex offenders could not attend group church services"; he received no reply. *Id.* Plaintiff then submitted a kiosk request to attend a group church service at the jail. *Id.* at 6-7. The following evening or night, Plaintiff received a message denying him access to group services but offering him access to one-on-one services. *Id.* at 7. Plaintiff asserts that he has "always practiced [his] religion with others of the same faith." *Id.* Plaintiff sought to speak to the Franklin County Sheriff and Undersheriff about the situation, but on December 17, 2025, he was transferred to the OCJ, where he remained as of January 17, 2026. *Id.*

To further support Count II, Plaintiff alleges that he was incarcerated in early February 2025 at Anderson County Detention Center, where he was allowed to attend group church services. *Id.* at 8. Plaintiff further asserts that, like the FCADC, Anderson County Detention Center stationed an officer in the room where group services are held to prevent any altercations. *Id.* Thus, Plaintiff believes that the FCADC did not have a legitimate safety concern based on his attending group services. *Id.* As relief in this matter, Plaintiff seeks $175,000.00 from the FCADC, the firing of Defendant Alexander, and an order directing the FCADC to allow inmates housed there to express their religious beliefs. *Id.* at 5.

## II.   Screening Standards

Because Plaintiff is a prisoner and proceeds in forma pauperis, the Court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes a pro se complaint such as this one and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the

3

allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

## III.  Discussion

### A.  The FCADC

The FCADC is subject to dismissal from this case because it is not a "person" suable under § 1983. Jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989) (neither state nor state agency is a "person" which can be sued under Section 1983); *Stone v. Jefferson County Detention Facility*, 838 Fed. Appx. 348, 350 (10th Cir. 2020) (unpublished) (holding county detention facility is not suable entity under § 1983 and citing *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (City of Denver Police Department "is not a separate suable entity"), *cert. granted, judgment vacated on other grounds sub nom. Tyus v. Martinez*, 475 U.S. 1138

(1986)).

## B. Defendant Tammy Alexander

Defendant Alexander is subject to dismissal from this case because the complaint does not sufficiently allege her personal participation. An essential element of a civil rights claim under § 1983 against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

In other words, a viable § 1983 claim must establish that each defendant caused a violation of Plaintiff's constitutional rights. *See Walker v. Johiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). Even liberally construing the complaint and taking all factual allegations therein as true, the only references to Defendant Alexander are that she was "in charge of the [FCADC] administration at the time of the civil rights violation" and that each officer involved "was under the direct order of [Defendant] Alexander." (Doc. 1, p. 1, 7.) The facts alleged in support of Counts I and II do not attribute any specific act or inaction to Defendant Alexander. Because supervisory liability alone is not sufficient to state a plausible § 1983 claim, Plaintiff has failed to state a claim against Defendant Alexander.

## C. Failure to State a Plausible Claim

### 1. Count I

Although Plaintiff does not specifically identify the constitutional right or rights he

believes were violated, the Court liberally construes the claim of a "violation of religious liberty" in Count I as asserting the violation of Plaintiff's rights under the First Amendment to the United States Constitution. (*See* Doc. 1, p. 3.) The Free Exercise Clause of the First Amendment "protects religious exercises." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523 (2022).

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted). In order to state a plausible claim that the constitutional right to free exercise of religion was denied, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs." *Id.* In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* at 1070.

"If the prisoner satisfies this initial step, 'defendants may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. Aug. 14, 2012) (unpublished) (citation omitted). The Court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.* The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> (1) requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. June 9, 2010) (unpublished) (quoting

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)). In *Strope*, the Tenth Circuit

reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held
> (1) the flat denial of a halal diet with approved meats was actionable, [*Abdulhaseeb*,
> 600 F.3d] at 1316–20, but (2) an incident (the panel concurrence notes "sporadic
> incidents") in which a prisoner's meal was rendered inedible by service of
> prohibited items contaminating his tray was not actionable, *id*. at 1320–21; *id.* at
> 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher
> restrictions did not support Free Exercise claim). We "assume[d] that as the
> frequency of presenting unacceptable foods increases, at some point the situation
> would rise to the level of a substantial burden," but that level had clearly not been
> reached. *Abdulhasseb*, 600 F.3d at 1321.

*Strope*, 381 F. App'x at 882.

In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not

sufficient to show a substantial burden. Even liberally construing the complaint now before the

Court and taking all facts alleged therein as true, Plaintiff alleges only a single, isolated time when

he was denied the ability to attend group church services. Therefore, he has not alleged sufficient

facts to support a plausible Free Exercise claim. *See Hildebrandt v. Richards*, 2025 WL 1294108,

*1-2 (D. Kan. May 5, 2025) (finding failure to show plausible claim of substantial burden on the

practice of religion where prisoner alleged that other than two occasions, he was denied access to

group worship services at the jail for a period of nearly 5 months).

### 2. Count II

In Count II, Plaintiff similarly fails to specifically identify the constitutional right or rights

he believes were violated; instead, he states only: "Discrimination." (Doc. 1, p. 3.) Count II could

be liberally construed, however, to raise an equal protection claim. The Tenth Circuit has

explained:

> "The Equal Protection Clause of the Fourteenth Amendment provides that
> no State shall 'deny to any person within its jurisdiction the equal protection of the
> laws.'" *A.N.*, 928 F.3d at 1196 (quoting U.S. Const. amend. XIV, § 1). This is

7

"essentially a direction that all persons similarly situated should be treated alike." *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016) (quotations omitted).

An equal protection claim may challenge legislation or the conduct of individual state actors. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994); *Home Tel. & Tel. Co. v. City of L.A.*, 227 U.S. 278, 287-88, 33 S. Ct. 312, 57 L. Ed. 510 (1913). It "may be asserted with respect to a group or a 'class of one.'" *A.N.*, 928 F.3d at 1196 (quoting *A.M.*, 830 F.3d at 1166). The former is more common and concerns a "governmental classification[ ] that affect[s] some groups of citizens differently than others." *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (quotations omitted).

*Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021).

Here, Plaintiff argues that he and other sex offender inmates were treated differently than non-sex offender inmates at the FCADC because the sex offender inmates were not allowed to attend group church services. (Doc. 1, p. 8.) But Plaintiff's claim is moot because he is no longer incarcerated at the FCADC. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison

conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).

The Tenth Circuit recently discussed the concept of "prudential mootness, perhaps more appropriately referred to as the doctrine of remedial discretion." *Eaves v. Polis*, 2026 WL 601777, *4 (10th Cir. Mar. 4, 2026). Under this doctrine, "[e]ven if a case is not constitutionally moot, a court still *may* rely on its remedial discretion to conclude that the benefit of injunctive (or declaratory) relief is too slight or speculative to justify granting such relief." *Id.* (citing *Bacote v. Fed. Bureau of Prisons*, 119 F.4th 808, 813-14 (10th Cir. 2024)).

> [W]here the question is whether a court should exercise its remedial discretion to deny a party prospective relief, . . . [t]he party seeking prospective relief . . . has the burden of showing relief is needed because "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."

*Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1053)).

In other words, "to avoid dismissal on the basis of prudential mootness, [P]laintiff bears the burden of establishing a recurrent violation of the wrongs about which he complained is more than an abstract possibility, such that the court may grant him some meaningful relief." *Id.* at *5 (citing *W.T. Grant*, 345 U.S. at 633, and *Rezaq v. Nalley*, 677 F.3d 1001, 1009-10 (10th Cir. 2012)). Because Plaintiff is no longer confined at the FCADC, the Court concludes that his request for injunctive relief based on the equal protection claim in Count II is subject to dismissal on the basis of prudential mootness. And, for the reasons set forth below, Plaintiff cannot obtain the compensatory damages he seeks in this matter. Thus, Plaintiff has failed in Count II to state a plausible claim on which relief could be granted.

### D.  Relief Requested

The Prison Litigation Reform Act (PLRA) provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). As used in the PLRA, "prisoner" includes is "any person incarcerated or detained in any facility who is accused of . . . violations of criminal law." 42 U.S.C. § 1997e(h). This provision of the PLRA "limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). This statute applies regardless of the nature of the underlying substantive violation asserted. *Id.* Simply put, without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages. *Id.* at 878. Plaintiff's claim for $175,000.00 in compensatory damages is subject to dismissal because Plaintiff has not made the required showing of a physical injury or the commission of a sexual act.

Additionally, even if Defendant Alexander were not subject to dismissal from this case because of Plaintiff's failure to adequately allege her personal participation in a constitutional violation, Plaintiff's request for the termination of Defendant Alexander's employment is subject to dismissal because the Court lacks the authority to order such relief. *See Belles v. Lasswell*, 2020 WL 5993261, *1 (D. Kan. Oct. 9, 2020) (unpublished) (addressing the plaintiff's request in a § 1983 action for the termination of a defendant's employment and collecting cases showing that this Court "is without authority to grant such relief").

## IV.    Conclusion

As explained above, it appears that this action is subject to dismissal in its entirety. Plaintiff will be granted time in which to show cause, in writing, why this matter should not be dismissed for failure to state a claim on which relief could be granted. If Plaintiff fails to timely respond to this order, this matter will be dismissed for the reasons stated in this order without further prior notice to Plaintiff.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **April 21, 2026**, in which to show cause, in a single written document submitted to this Court, why this matter should not be dismissed for failure to state a claim on which relief could be granted.

**IT IS SO ORDERED.**

DATED:  This 11th day of March, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge